# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------- x

THE RODGERS & HAMMERSTEIN
ORGANIZATION; MTI ENTERPRISES, INC.
d/b/a MUSIC THEATRE INTERNATIONAL;
MUSIC THEATRE INTERNATIONAL, LLC,
d/b/a MUSIC THEATRE INTERNATIONAL;
and THE REALLY USEFUL GROUP LTD.,

                Plaintiffs,

        - against -

DWIGHT H. BRUBAKER, JAMES D.
MARTIN, and FREDERICK W. STEUDLER,
JR., trading as ENTERTAINMENT THEATRE
GROUP, a Pennsylvania General Partnership,
d/b/a/ AMERICAN MUSIC THEATRE,

                Defendants.

------------------------------------------------------------- x

Civil Action No. _____

**ECF CASE**

## COMPLAINT

Plaintiffs The Rodgers & Hammerstein Organization, MTI Enterprises, Inc., Music Theatre International, LLC and The Really Useful Group Ltd. (collectively, "Plaintiffs"), by and through their undersigned attorneys Pepper Hamilton LLP and Davis Wright Tremaine LLP, as and for their complaint against defendants Dwight H. Brubaker, James D. Martin, and Frederick W. Steudler, Jr., trading as Entertainment Theatre Group, a general partnership doing business as American Music Theatre (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.     This is an action for copyright infringement arising from Defendants' presentation of a theatrical musical production entitled "Broadway: Now and Forever" at the American Music Theatre in Lancaster, Pennsylvania. This Production is comprised entirely of unauthorized performances of musical numbers (and select dialogue) from various acclaimed Broadway

theatrical musicals including "The Producers," "West Side Story," "Annie," "Les Miserables," "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera" (collectively, the "Musicals"). Each musical number is performed in dramatic fashion using various costumes, scenery, props, choreography, and/or staging (including those that are reminiscent of the Broadway productions of each Musical) with the admitted intent of providing the audience with a total theatrical experience. For the last five months, Defendants have been repeatedly presenting public performances of "Broadway: Now and Forever" for commercial gain in their 1600-seat, for-profit theater without obtaining the required copyright permissions from Plaintiffs, the owners of the copyright or certain exclusive copyright interests in the Musicals and the well-known songs in them as described more fully below.

2.      Plaintiffs first learned of "Broadway: Now and Forever" from some of their theatre company customers in Pennsylvania who expressed concern that the numbers included in the production of "Broadway: Now and Forever" conflicted with rights that those theatre companies had licensed from the Licensing Plaintiffs. Plaintiffs wrote several letters demanding that Defendants immediately cease and desist the unauthorized performances of the Musicals. In addition upon information and belief, since at least June of 2013, Defendants have been on explicit notice from ASCAP that the musical numbers performed in "Broadway: Now and Forever" are dramatic in nature and thus beyond the scope of Defendants' ASCAP license and therefore require permission of the Plaintiffs.

3.      Founded, respectively, by industry veterans Richard Rodgers/Oscar Hammerstein, and Frank Loesser/Don Walker, The Rodgers & Hammerstein Organization ("R&H") and MTI Enterprises, Inc. and Music Theatre International, LLC, (collectively, "MTI") each have more

than 50 years of experience in granting licenses to theatres around the United States to perform professional or amateur productions of the musicals they represent.

4.     R&H and MTI (collectively, the "Licensing Plaintiffs") exclusively control the United States rights to license amateur and non-first class productions of all of the Musicals except for "The Phantom of the Opera." Plaintiff The Really Useful Group Ltd. ("RUG") owns the copyright in that dramatico-musical work.    "The Phantom of the Opera" is still running on Broadway and is not yet available for license to non-first class professional productions by any theater company in the United States.

5.     This is not, in fact, the first time that Defendants have misappropriated the performance rights of dramatico-musical works controlled by one of the Plaintiffs, nor is it planned to be the last.  In 2011, Defendants produced a theatrical production entitled "Music of the Night: The Songs of Andrew Lloyd Webber," which was comprised, on information and belief, entirely of unauthorized performances of musical numbers from dramatico-musical works by Andrew Lloyd Webber. Upon information and belief, each musical number was performed in dramatic fashion using various costumes, scenery, props, choreography, and/or staging (including those that were reminiscent of the Broadway productions of each dramatico-musical work).  According to Defendants' website, they plan to present a slightly revised version of "Music of the Night: the Songs of Andrew Lloyd Webber" starting in the Spring of 2014.

6.     R&H is the exclusive United States licensing agent for non-first class and amateur productions of the dramatico-musical works of Andrew Lloyd Webber (with the exception of "The Phantom of the Opera").  RUG owns, co-owns, or controls under exclusive license the copyrights in the dramatico-musical works of Andrew Lloyd Webber (including "The Phantom of the Opera").  Defendants did not obtain from R&H or RUG licenses for the performances of

the dramatico-musical works of Andrew Lloyd Webber that were included in the 2011 version and have not obtained licenses for those that will be included in the 2014 version of "Music of the Night: The Songs of Andrew Lloyd Webber."

7.     Defendants' use of the Musicals and the selected songs therefrom in "Broadway: Now and Forever" has and will continue to irreparably injure Plaintiffs unless Defendants are enjoined, and has unjustly enriched Defendants at Plaintiffs' expense and to their detriment. Defendants' use of the dramatico-musical works of Andrew Lloyd Webber included in "Music of the Night: the Songs of Andrew Lloyd Webber" has and will continue to irreparably injure R&H and RUG unless Defendants are enjoined, and has unjustly enriched Defendants at R&H and RUG's expense and to their detriment.  Plaintiffs seek damages and injunctive relief, and plaintiffs R&H and RUG seek a declaration that Defendants have no right to proceed with the 2014 revival of "Music of the Night: The Songs of Andrew Lloyd Webber."

## THE PARTIES

8.     Plaintiff The Rodgers & Hammerstein Organization ("R&H") is a general partnership formed under the laws of the state of New York with its principal place of business at 229 W. 28th St., 11th Floor, New York, New York 10001.

9.     Plaintiff MTI Enterprises, Inc. ("MTI Enterprises") is a corporation formed under the laws of the State of New York, with its principal place of business at 421 W. 54th Street, 2nd Fl., New York, New York 10019.

10.     Plaintiff Music Theatre International, LLC ("MTI LLC") is a limited liability company formed under the laws of the State of Delaware, with its principal place of business at 421 W. 54th Street, 2nd Fl., New York, New York 10019.  (Collectively, MTI Enterprises and MTI LLC are referred to hereinafter as "MTI.")

11.    Plaintiff The Really Useful Group Ltd. ("RUG") is a private limited company formed under the laws of the United Kingdom with its principal place of business at 17 Slingsby Place, London, WC2E 9AB, United Kingdom.

12.    Upon information and belief, Defendant Entertainment Theatre Group, doing business as American Music Theatre ("AMT") is a general partnership formed under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 2425 Lincoln Highway East, Lancaster, Pennsylvania 17602.

13.    Upon information and belief, Defendant James D. Martin is a general partner of Entertainment Theatre Group and, upon information and belief, manages the day-to-day operations of AMT.   Upon information and belief, he resides at 144 Huntingwood Drive, Lancaster, Pennsylvania 17602-1391.

14.    Upon information and belief, Defendant Dwight H. Brubaker is a general partner of Entertainment Theatre Group.  Upon information and belief, he resides at 1117 Four Leaf Lane, Hollidaysburg, Pennsylvania 16648-2514.

15.    Upon information and belief, Defendant Frederick W. Steudler, Jr. is a general partner of Entertainment Theatre Group.  Upon information and belief, he resides at 7335 River Road, Conestoga, Pennsylvania 17516-9504.

## JURISDICTION AND VENUE

16.    This action arises under and pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*

17.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because it arises under the copyright laws of the United States.

DWT 22542217v3 0063653-000013

18.     The Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P., Rule 4(k)(1)(A) because Defendants reside in Pennsylvania and are subject to the jurisdiction of the courts of general jurisdiction of Pennsylvania.

19.     Venue in this action lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in Pennsylvania, at least one of the Defendants resides in the Eastern District of Pennsylvania, and a substantial part of the events and omissions giving rise to the claims occurred and are occurring in this District.

## FACTUAL BACKGROUND

### Plaintiffs and the Musicals

20.     Plaintiff RUG was founded in 1977 by composer Andrew Lloyd Webber and exists to bring his work to the world.  RUG manages Andrew Lloyd Webber's complete catalogue of compositions, including theatrical and symphonic works, a requiem mass, and rock and pop songs.

21.     Plaintiffs R&H and MTI are two of the leading theatrical licensing agents and provide theatres throughout the world with the required public performance rights to a vast array of theatrical musicals for, *inter alia*, non-first-class and amateur productions in the United States. In the theatrical industry, a "first class" production typically describes a production on Broadway or in London, or occasionally a production in a similarly large city or a high-quality national tour of the United States.  A non-"first-class" theatrical production typically describes a regional, stock, or off-Broadway production or a production by a smaller national or regional tour.  An "amateur" theatrical production typically describes productions by community theatres, schools, and church groups.

22.     R&H and MTI have an extremely wide range of customers including elementary, middle and high schools; Broadway producers, summer stock and dinner theatres; colleges and

universities; regional theatres and opera companies; community, civic and religious organizations; youth theatres, cruise ships, casinos, hotels and producers of touring and Off-Broadway productions.  At any given time, there are dozens or even hundreds of productions around the country of musicals licensed by Licensing Plaintiffs.

23.    The theatrical performance rights that R&H and MTI hold and license are known in the theatrical industry as "grand rights."  "Grand rights" have been defined by the courts as the rights that are required when "(1) a song is used to tell a story or (2) a song is performed with dialogue, scenery, or costumes."[1]

24.    Typically, copyright owners grant the rights to issue licenses to perform a dramatico-musical work with theatrical elements such as dialogue, scenery or costumes to licensing organizations such as R&H and MTI.  Copyright owners may also grant to licensing organizations the exclusive right to license dramatic performances of individual songs.  For example, the copyright owners of the musicals "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," and "Cats" have granted R&H the exclusive right to license dramatic performances of individual songs from those works.

25.    Also typically, copyright owners grant the rights to issue licenses to perform individual songs in a non-dramatic context, known in the industry as "small rights", to performing rights societies such as ASCAP, BMI and SESAC.  The small rights in all of the Musicals and the dramatico-musical works of Andrew Lloyd Webber included in "Music of the Night: the Songs of Andrew Lloyd Webber" are licensed by ASCAP (except for the small rights to "The Producers," which are licensed by BMI).

---

[1] *Gershwin v. The Whole Thing Company,* 1980 US Dist. LEXIS 16465, 208 U.S.P.Q. 557 (C.D. Cal. 1980).

26.    R&H owns, *inter alia*, the exclusive United States rights to license amateur and non-first-class productions of the dramatico-musical works of Andrew Lloyd Webber, including "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," and "Cats."

27.    MTI Enterprises owns, *inter alia*, the exclusive United States rights to license amateur and non-first class productions of "Annie" and "Les Miserables".

28.    MTI LLC owns, *inter alia*, the exclusive United States rights to license amateur and non-first class productions of "The Producers" and "West Side Story".

29.    Because R&H and MTI are exclusive licensees of the aforementioned copyright interests, R&H and MTI are entitled to bring suit to protect their rights, pursuant to 17 U.S.C. §§ 201(d)(2) and 501(b).

30.    RUG owns the exclusive United States right to license non-first-class productions of "The Phantom of the Opera."

31.    The dramatico-musical works referred to in paragraphs 26, 27, 28 and 30, and the dramatico-musical works from which songs are used in "Music of the Night: The Songs of Andrew Lloyd Webber," are collectively referred to herein as the "Infringed Works."

**AMT's Production of "Broadway: Now and Forever"**

32.    Upon information and belief, AMT operates a 1,600-seat theatre in Lancaster, Pennsylvania which, according to AMT's website at www.amtshows.com, "hosts more than 300 live concerts and performances each year: from Broadway shows to rock concerts and comedy club performers to today's hottest country music concerts."

33.    AMT commenced performances of "Broadway: Now and Forever" on or about April 16, 2013 and has scheduled it to run several nights per week through Saturday, October 12, 2013.    The AMT website promotes "Broadway: Now and Forever" as "a larger-than-life

8

theatrical compilation of unforgettable music from the hottest new blockbusters to all-time favorite classics." As the website brags, "Broadway: Now and Forever" includes 40 songs from 17 Broadway musicals. Ticket prices as advertised range from $16 for children to $27 for AMT members to $32 for adults, and the theatre seats up to 1,600 audience members.

34. "Broadway: Now and Forever" includes songs from eight musicals that the Licensing Plaintiffs have the exclusive right to license for amateur and non-first-class productions in the United States, and one musical ("The Phantom of the Opera") that Plaintiff RUG has not yet licensed for non-first-class productions in the United States:

- "I Want to Be a Producer," "Along Came Bialy," and "We Can Do It" from "The Producers";

-  "Something's Coming" and "Tonight" from "West Side Story";

- "Little Girls," "It's the Hard Knock Life," and "Tomorrow" from "Annie";

- "Superstar" (identified in the AMT program as "Jesus Christ Superstar") from "Jesus Christ Superstar";

- "Any Dream Will Do" from "Joseph and the Amazing Technicolor Dreamcoat";

- "Don't Cry for Me Argentina" from "Evita";

- a piece of dance music (a portion of the song "The Naming of Cats") from "Cats";

- the title song from "The Phantom of the Opera"; and

- "Castle on a Cloud," "Master of the House," "On My Own," "Bring Him Home," and "One Day More" from "Les Miserables."

35.     The musical numbers in "Broadway: Now and Forever" are staged not in a concert format, but as excerpts from the musicals for which the songs were written.  Scenery, costumes, props, staging, and/or choreography are used in connection with each number in order to evoke and recreate, at least in part, the Musical in which that number appeared, in a manner reminiscent of past Broadway productions of the Musicals.

36.     As the excerpts from each Musical are performed, logos identical or similar to those used by the producers of Broadway productions of that Musical are projected onto screens in the back and to the right and the left of the stage.

37.     For example, the performers cast as the orphans in "Annie" (seen in the photos below) wear worn-out dresses and pinafores, and carry metal buckets to clean the floor, similar to those worn and carried in Broadway productions of "Annie."  The character of Annie (seen in the photo below) wears her signature red dress with white collar and belt.  Dialogue from the musical "Annie" between Miss Hannigan and the orphans is used to introduce the song "It's the Hard Knock Life."  The same "ANNIE" logo used in connection with the Broadway production of "Annie" (featuring the Annie cartoon character standing in front of the letter "i" in her name) is projected onto screens at the back and to the left and right of the stage as the numbers from "Annie" are performed.  The Playbill for "Broadway: Now and Forever" clearly identifies which musical numbers come from "Annie."





38.    The performer playing the character of the Phantom in "The Phantom of the Opera" (seen in the photo below) wears a black cape over black formal attire with white tie, and a white mask covering the right side of his face – just as the character of the Phantom does in the Broadway production.  The performer playing the character Christine (seen in the photos below) wears an elaborate ball gown and a long wavy brunette wig – just as the character Christine does in the Broadway production.  As the title song progresses, fog appears onstage – just as it does during the same song in the Broadway production.  Again, the logo used in connection with the Broadway production of "THE PHANTOM OF THE OPERA" is projected on screens at the back and to the left and right of the stage.

DWT 22542217v3 0063653-000013




39.     The performer playing the title character of "Evita" (seen in the photo below) wears a white strapless gown, a bracelet on her right wrist, and her hair pulled back in a tight bun. She stands on a platform to sing to a crowd below, who turn their backs to the audience and reach up to her. As she sings "Don't Cry for Me Argentina," she spreads her arms wide above her head. The costuming and staging closely resemble those of the Broadway production. The logo "EVITA" as used in conjunction with the Broadway productions of "Evita" is projected on screens at the back and to the left and right of the stage during that number.



40.    The dancer in the number from "Cats" (seen in the photo below) wears a white unitard with furry pieces at the ankles and wrists, a white wig with cat ears, and white cat face makeup similar to those played by the character Victoria in the Broadway production.  She dances a solo dance that closely resembles the solo dance of Victoria in the Broadway production.  The "cat's eyes" logo used in conjunction with the Broadway production of "CATS" appears on screens at the back and to the left and right of the stage during that number.



41.    The character of Joseph in "Joseph and the Amazing Technicolor Dreamcoat" (as shown in the photo below) wears a brightly-colored, floor length coat of many colors that resembles the one used in the Broadway production. The logo "JOSEPH AND THE AMAZING TECHNICOLOR DREAMCOAT," similar to that used in conjunction with Broadway productions, is projected on screens at the back and to the left and right of the stage during that number.



42.    The similarities described in the foregoing paragraphs are merely representative examples; in the case of each and every song performed in "Broadway: Now and Forever", including the ones for which the Plaintiffs control the grand rights, there is use of costumes, scenery, props, choreography, and/or staging that evokes the Musicals from which these songs are taken as shown in the photographs below, which include the entire cast in iconic costumes evoking the Broadway productions of the Musicals, a song from "The Producers," and a song from "Les Miserables."






43.    The similarities between "Broadway: Now and Forever" on the one hand and the Broadway productions on the other, are not coincidental.    As the AMT website at www.amtshows.com/Broadway-Now-and-Forever/ explains, "Broadway: Now & Forever *recreates* the greatest moments ever on stage." (emphasis added).    The AMT website also describes the show as "a larger-than-life theatrical compilation of unforgettable music from the hottest new blockbusters to all-time favorite classics."    A video advertisement available at

http://vimeo.com/47017047 similarly states that the production "will *recreate* some of the greatest moments ever on stage."

44.    Indeed, the very name of the show evokes the Broadway production of "Cats," which famously used "Now and Forever" as its advertising tagline.

45.    Posters displayed in the theater lobby further demonstrate Defendants' intent to recreate the Broadway productions and to present the audience with the total experience of going to the theatre to see the musical.  These posters evoke the Broadway productions in which the songs in "Broadway: Now and Forever" appeared, by among other things, featuring the Broadway playbills for the shows (as shown in the photos below).  The posters appearing in the lobby that tout the individual Musicals use imagery that evokes the Musicals from which the productions songs were taken, including the chandelier for "The Phantom of the Opera and the balcony for "Evita."





DWT 22542217v3 0063653-000013



46.    A June 2013 interview of AMT's artistic director, Andrea McCormick, available at http://www.woodstovehouse.com/podcast-111-amt/ makes clear that "Broadway: Now and Forever" is not intended to be a concert.  In the interview, McCormick explains that while people know AMT for the touring concerts that visit the facility (which she refers to as "the celebrity stuff we bring through"), her mission is to make the local community aware of AMT's "amazing theatrical side."  In describing "Broadway: Now and Forever" itself, McCormick says, "These are mega creations. . . .  I require a theatrical level of acting from everyone so that you're in a total experience."

**No Prior Permission from Copyright Owners**

47.    The dramatico-musical works "The Producers," "West Side Story," "Annie," "Jesus Christ Superstar," "Evita, "Joseph and the Amazing Technicolor Dreamcoat," "Cats,"

DWT 22542217v3 0063653-000013

Phantom of the Opera," and "Les Miserables" that appear in "Broadway: Now and Forever" are the subjects of valid and subsisting registrations issued by the United States Copyright Office. Exhibit A provides the applicable copyright registration numbers for those works as well as for the individual songs also sued upon herein.

48.    AMT did not seek or receive permission from Plaintiff RUG, the Licensing Plaintiffs or any of the copyright owners represented by the Licensing Plaintiffs to perform the Infringed Works, or songs therefrom, in a theatrical production or to include the Infringed Works, or songs therefrom, in "Broadway: Now and Forever".

49.    AMT is not paying any licensing fee to Plaintiffs or the copyright owners or anyone authorized by them for its reproduction, performance, and/or distribution use of these works or to create derivative works of same.

**AMT is Not Paying ASCAP or BMI Licensing Fees for "Broadway: Now and Forever"**

50.    Upon information and belief, AMT holds blanket licenses from ASCAP and BMI. Upon information and belief, the blanket licenses issued by ASCAP to licensee-venues such as AMT, state, "This license is limited to non-dramatic performances, and does not authorize any dramatic performances."    The license defines "dramatic performances" as including "performance of one or more musical compositions from a 'dramatico-musical work' (as hereinafter defined) accompanied by dialogue, pantomime, dance, stage action, or visual representation of the work from which the music is taken."    "Dramatico-musical work" is defined as including, but not being limited to, "a musical comedy, opera, play with music, revue, or ballet."

51.    Upon information and belief, on June 6, 2013, ASCAP notified AMT (the "ASCAP Notice") that it would not collect the ASCAP licensing fees from AMT for dates on which AMT presented theatrical performances such as performances of "Broadway: Now and

18

Forever." Upon information and belief, the ASCAP Notice further explained ASCAP's view that the performances of songs from Broadway musicals licensed by ASCAP and included in "Broadway: Now and Forever" are beyond the scope of AMT's blanket ASCAP license because the production appears to be a "dramatico-musical work" as that term is defined by AMT's ASCAP license.

52.    Upon information and belief, the blanket licenses issued by BMI to licensee-venues such as AMT, state, "This license does not include: (i) dramatic rights, the right to perform dramatico-musical works in whole or in substantial part, the right to present individual works in a dramatic setting or the right to use the music licensed hereunder in any context which may constitute an exercise of the 'grand rights' therein." Upon information and belief, AMT is not paying any licensing fees to BMI for the production of "Broadway: Now and Forever."

**Plaintiffs' Learn of "Broadway: Now and Forever" and Put Defendants On Notice of Their Infringement**

53.    The Plaintiffs first learned of "Broadway: Now and Forever" not from Defendants, but from another theatre company in Pennsylvania that had licensed or wanted to license some of the dramatico-musical works included in "Broadway: Now and Forever."

54.    Upon learning of "Broadway: Now and Forever", in April of 2013, MTI demanded by email and, subsequently, letter that AMT cease and desist using the songs from "The Producers," "West Side Story," "Annie," and "Les Miserables" in conjunction with dramatic elements.

55.    Upon learning of "Broadway: Now and Forever", in May of 2013, R&H demanded by letter that AMT cease and desist using the songs from "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera" in "Broadway: Now and Forever" in conjunction with dramatic elements.

56.    Throughout April, May and June of 2013, Plaintiffs and/or their counsel exchanged a series of letters and emails with AMT and its outside counsel.  In sum, Plaintiffs informed AMT, *inter alia*, that it was presenting dramatic performances that infringed the copyrights in "The Phantom of the Opera," "Jesus Christ Superstar," "Evita," "Joseph and the Amazing Technicolor Dreamcoat," "Cats," "Annie," "The Producers," "Les Miserables," and "West Side Story" and in the individual songs from those productions incorporated in "Broadway: Now and Forever" because they had not obtained grand rights to perform those works.  Plaintiffs demanded that AMT cease and desist.

57.    In the course of the correspondence, and following receipt of the ASCAP Notice, AMT ultimately conceded that the small rights granted by its ASCAP and BMI licenses did not cover the production of "Broadway: Now and Forever," but incredibly, asserted that AMT's performances of the copyrighted material was a fair use.  Plaintiffs, through their counsel, provided a thorough rebuttal of that assertion.

58.    Defendants have continued to present "Broadway: Now and Forever" despite their knowledge that they were not licensed to do so by ASCAP or BMI or by the copyright owners or their exclusive licensees.

## AMT's Past Productions of "Music of the Night: The Songs of Andrew Lloyd Webber"

59.    Without prior permission of R&H or RUG, AMT presented a revue from May 12 through and including July 1, 2011 titled "Music of the Night: The Songs of Andrew Lloyd Webber," which, upon information and belief, included songs from the shows listed in paragraphs 266 and 30 as well as songs from other Andrew Lloyd Webber theatrical musicals such as "Sunset Boulevard," "Starlight Express," "Song and Dance," "Whistle Down the Wind," "The Beautiful Game," and "Aspects of Love," as well as the musical mass "Requiem."

DWT 22542217v3 0063653-000013

60.    In correspondence with R&H, Defendant Martin described this revue to R&H in 2011 as a "totally concert format" and represented that AMT they would not use costumes of any kind but that performers would wear gowns or tuxedos.  R&H and RUG have subsequently learned that AMT artistic director Andrea McCormick explained in a 2011 interview about the this revue, "there are a lot of scene changes" and "[e]verything is sweeping, every number feels like the finale.  We picked the biggest numbers from the shows."   Videos obtained via YouTube show that, despite Martin's representation that the Music of the Night 2011 would be a "totally concert version" with no costumes, the production in fact made use of theatrical elements such as costumes (including Joseph's "Dreamcoat" and black clothes with a leather jacket and hat for the Che character in "Evita"), choreography, projections and fog.  In addition, the show's title, "Music of the Night," is the name of a well-known song from "The Phantom of the Opera" and evokes that musical.

### AMT's Future Productions of "Music of the Night: The Songs of Andrew Lloyd Webber"

61.    AMT has announced that from April 15, 2014 through October 11, 2014, it plans to present a revival of "Music of the Night: The Songs of Andrew Lloyd Webber," in which "[t]he AMT Orchestra, Singers and Dancers will reprise show-stoppers from hits such as *The Phantom of the Opera, Jesus Christ Superstar, Cats, Evita*."

62.    Upon information and belief, the revival of "Music of the Night: The Songs of Andrew Lloyd Webber," just like "Broadway: Now and Forever," will not be a concert but rather a theatrical revue or compilation that will feature scenery, costumes, staging, choreography, and/or other theatrical elements.

63.    Neither RUG nor R&H have authorized any past or future use of Andrew Lloyd Webber's songs in the theatrical show "Music of the Night: The Songs of Andrew Lloyd Webber."

**Plaintiffs' Injury**

64.    Upon information and belief, Defendants are paying neither ASCAP nor BMI licensing fees nor the licensing fees normally paid by theatres to Plaintiffs for the use of their copyrighted material in "Broadway: Now and Forever."    Therefore Defendants are unjustly profiting at Plaintiffs' expense.

65.    By arrogating to themselves the right to theatrically perform songs from "The Phantom of the Opera," which plaintiff RUG has not yet released to non-first-class professional theatres in the United States, Defendants are interfering with RUG's exclusive right to authorize (or not to authorize) public performances of its work and to authorize the first such production.

66.    Defendants' actions are highly likely to interfere with and damage the Licensing Plaintiffs' relationships with other amateur and non-first-class theatres who are their existing customers.    These customers are likely to wonder why they should pay licensing fees to perform musicals such as "Cats" and "West Side Story" if Defendants can perform truncated versions of those musicals without permission or payment.    They may also wonder why they should wait for rights to be available for musicals currently running on Broadway such as "The Phantom of the Opera," if they can simply perform abridged dramatico-musical versions of those songs without permission or payment.    Indeed, plaintiff MTI received calls and emails of concern from theatres in AMT's vicinity that were producing or planning to produce licensed productions of the Musicals, songs from which appear in "Broadway: Now and Forever."

67.    Defendants' use of the Infringed Works in "Broadway: Now and Forever" and in the 2011 version of "Music of the Night" and its stated intention to produce and present "Music of the Night" in 2014 has and will cause marketplace confusion.

68.    The amount of the consequent injury to Plaintiffs' good will, reputation, copyrights, and future business prospects is incalculable.

22

## AS AND FOR A FIRST CLAIM FOR RELIEF

### (Copyright Infringement of "The Producers")

69.     Plaintiffs repeat and reallege paragraphs 1 through and including 68 set forth hereinabove, as if the same were fully set forth herein.

70.     The lyrics and book of the musical "The Producers," by Mel Brooks (lyrics) and Thomas Meehan (book), are the subject of United States Copyright Registration No. Pau 2-507-947.[2]  "The Producers" is therefore subject to valid and subsisting protection under the laws of the United States.

71.     The copyright owners have granted an exclusive license to plaintiff MTI LLC to license public performances of "The Producers" for amateur and non-first-class productions in the United States.

72.     At no time has plaintiff MTI LLC or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "The Producers."

73.     Defendants' performance of three songs from "The Producers," together with attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes performance of a dramatico-musical work in substantial part and/or the use of licensed music in a 'grand rights' context, as described by BMI and under law, and therefore is not covered by Defendants' BMI license.

74.     Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

---

[2]  Annexed hereto as Exhibit A is a chart showing the copyright registration numbers for the copyright registrations at issue in this Complaint.

75.    Defendants' performance of three songs from "The Producers" has violated and continues to violate MTI LLC's exclusive copyright interests in "The Producers" pursuant to 17 U.S.C. § 106(4).

76.    Defendants' violation of MTI LLC's exclusive rights is willful.

77.    As a direct and proximate result of Defendants' intentional acts as alleged herein, MTI LLC has been injured, in an amount presently unknown and to be determined at time of trial.

78.    At its discretion, MTI LLC will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

79.    MTI LLC is entitled to a permanent injunction because the injury that MTI LLC has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; MTI LLC has no adequate remedy at law; considering the balance of hardships between MTI LLC and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A SECOND CLAIM FOR RELIEF

### (Copyright Infringement of "West Side Story")

80.    Plaintiffs repeat and reallege paragraphs 1 through and including 79 set forth hereinabove, as if the same were fully set forth herein.

81.    The musical "West Side Story," with music by Leonard Bernstein, lyrics by Stephen Sondheim, and book by Arthur Laurents, is the subject of United States Copyright Registration No. RE0000221477.    This registration was a renewal of Registration No. DU0000042068, which had been issued on March 23, 1956. "West Side Story" is therefore subject to valid and subsisting protection under the laws of the United States.

82.    The copyright owners have granted an exclusive license to plaintiff MTI LLC to license public performances of "West Side Story" for amateur and non-first-class productions in the United States.

83.    At no time has plaintiff MTI LLC or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "West Side Story."

84.    Defendants' performance of two songs from "West Side Story," together with attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

85.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

86.    Defendants' performance of two songs from "West Side Story" has violated and continues to violate MTI LLC's exclusive copyright interests in "West Side Story," pursuant to 17 U.S.C. § 106(4).

87.    Defendants' violation of MTI LLC's exclusive rights is willful.

88.    As a direct and proximate result of Defendants' intentional acts as alleged herein, MTI LLC has been injured, in an amount presently unknown and to be determined at time of trial.

89.    At its discretion, MTI LLC will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

90.    MTI LLC is entitled to a permanent injunction because the injury that MTI LLC has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as

requested herein is irreparable; MTI LLC has no adequate remedy at law; considering the balance of hardships between MTI LLC and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (Copyright Infringement of "Annie")

91.     Plaintiffs repeat and reallege paragraphs 1 through and including 90 set forth hereinabove, as if the same were fully set forth herein.

92.     The musical "Annie," with music by Charles Strouse and lyrics by Martin Charnin, is the subject of United States Copyright Registration No. RE0000918254.   This registration was a renewal of Registration No. EU0000780881, which had been issued on May 2, 1977.   "Annie" is therefore subject to valid and subsisting protection under the laws of the United States.

93.     The copyright owners have granted an exclusive license to plaintiff MTI Enterprises to license public performances of "Annie" for amateur and non-first-class productions in the United States.

94.     At no time has plaintiff MTI Enterprises or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "Annie."

95.     Defendants' performance of two songs from "Annie," together with attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

96.     Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

26

97.    Defendants' performance of two songs from "Annie" has violated and continues to violate MTI Enterprises' exclusive copyright interests in "Annie" pursuant to 17 U.S.C. § 106(4).

98.    Defendants' violation of MTI Enterprises' exclusive rights is willful.

99.    As a direct and proximate result of Defendants' intentional acts as alleged herein, MTI Enterprises has been injured, in an amount presently unknown and to be determined at time of trial.

100.    At its discretion, MTI Enterprises will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

101.    MTI Enterprises is entitled to a permanent injunction because the injury that MTI Enterprises has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; MTI Enterprises has no adequate remedy at law; considering the balance of hardships between MTI Enterprises and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

### (Copyright Infringement of "Jesus Christ Superstar")

102.    Plaintiffs repeat and reallege paragraphs 1 through and including 101 set forth hereinabove, as if the same were fully set forth herein.

103.    The musical "Jesus Christ Superstar," with lyrics by Tim Rice and music by Andrew Lloyd Webber, is the subject of United States Copyright Registration No. RE0000794089. This registration was a renewal of Registration No. DP0000007618, which had been issued on December 15, 1970. "Jesus Christ Superstar" is therefore subject to valid and subsisting protection under the laws of the United States.

DWT 22542217v3 0063653-000013

104.   The copyright owners have granted an exclusive license to plaintiff R&H to license public performances of "Jesus Christ Superstar" for amateur and non-first-class productions in the United States.

105.   At no time has plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "Jesus Christ Superstar."

106.   Defendants' performance of the song "Superstar" (identified in the playbill as "Jesus Christ Superstar") from "Jesus Christ Superstar", together with attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

107.   Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

108.   Defendants' performance of "Superstar" from "Jesus Christ Superstar" has violated and continues to violate R&H's exclusive copyright interests in "Jesus Christ Superstar" pursuant to 17 U.S.C. § 106(4).

109.   Defendants' violation of R&H's exclusive rights is willful.

110.   As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

111.   At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

112.   R&H is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as

requested herein is irreparable; R&H has no adequate remedy at law; considering the balance of hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A FIFTH CLAIM FOR RELIEF

### (Copyright Infringement of "Superstar")

113.    Plaintiffs repeat and reallege paragraphs 1 through and including 112 set forth hereinabove, as if the same were fully set forth herein.

114.    The song "Superstar," with lyrics by Tim Rice and music by Andrew Lloyd Webber, is the subject of United States Copyright Registration No. RE0000755315.  This registration was a renewal of Registration No. EU0000151211, which had been issued on December 5, 1969.  "Superstar" is therefore subject to valid and subsisting protection under the laws of the United States.

115.    The .copyright owners have granted an exclusive license to plaintiff R&H to license public performances of the song "Superstar" for amateur and non-first-class productions in the United States.  "Superstar" is therefore subject to valid and subsisting protection under the laws of the United States.

116.    At no time has plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of the song "Superstar."

117.    Defendants' performance of the song "Superstar," together with the attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

118.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

119.    Defendants' performance of the song "Superstar" has violated and continues to violate R&H's exclusive copyright interests in "Superstar" pursuant to 17 U.S.C. § 106(4).

120.    Defendants' violation of R&H's exclusive rights is willful.

121.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

122.    At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

123.    R&H is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable R&H has no adequate remedy at law; considering the balance of hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A SIXTH CLAIM FOR RELIEF

### (Copyright Infringement of "Joseph and the Amazing Technicolor Dreamcoat")

124.    Plaintiffs repeat and reallege paragraphs 1 through and including 123 set forth hereinabove, as if the same were fully set forth herein.

125.    The musical "Joseph and the Amazing Technicolor Dreamcoat," with lyrics by Tim Rice and music by Andrew Lloyd Webber, is the subject of United States Copyright Registration No. RE000752885.    This registration was a renewal of Registration No. EFO000134415, which had been issued on January 16, 1969.    "Joseph and the Amazing Technicolor Dreamcoat" is therefore subject to valid and subsisting protection under the laws of the United States.

126.    The copyright owners have granted an exclusive license to plaintiff R&H to license public performances of "Joseph and the Amazing Technicolor Dreamcoat" for amateur and non-first-class productions in the United States.

127.    At no time has plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "Joseph and the Amazing Technicolor Dreamcoat."

128.    Defendants' performance of "Any Dream Will Do" from "Joseph and the Amazing Technicolor Dreamcoat", together with attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

129.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

130.    Defendants' performance of "Any Dream Will Do" from "Joseph and the Amazing Technicolor Dreamcoat" has violated and continues to violate Plaintiffs' exclusive copyright interests in the "Any Dream Will Do" pursuant to 17 U.S.C. § 106(4).

131.    Defendants' violation of R&H's exclusive rights is willful.

132.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

133.    At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

134.    R&H is entitled to a permanent injunction because the injury that R&H had suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as

DWT 22542217v3 0063653-000013

requested herein is irreparable; R&H has no adequate remedy at law; considering the balance of hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

### (Copyright Infringement of "Any Dream Will Do")

135.    Plaintiffs repeat and reallege paragraphs 1 through and including 134 set forth hereinabove, as if the same were fully set forth herein.

136.    The song "Any Dream Will Do," with lyrics by Tim Rice and music by Andrew Lloyd Webber, is the subject of United States Copyright Registration No. Efo171657. "Any Dream Will Do" is therefore subject to valid and subsisting protection under the laws of the United States.

137.    The copyright owners have granted an exclusive license to plaintiff R&H to license public performances of the song "Any Dream Will Do" for amateur and non-first-class productions in the United States.

138.    At no time has plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of the song "Any Dream Will Do."

139.    Defendants' performance of the song "Any Dream Will Do," together with attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

140.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

141.    Defendants' performance of the song "Any Dream Will Do" has violated and continues to violate R&H's exclusive copyright interests in "Any Dream Will Do" pursuant to 17 U.S.C. § 106(4).

142.    Defendants' violation of R&H's exclusive rights is willful.

143.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

144.    At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

145.    R&H is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; R&H has no adequate remedy at law; considering the balance of hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF

### (Copyright Infringement of "Evita")

146.    Plaintiffs repeat and reallege paragraphs 1 through and including 145 set forth hereinabove, as if the same were fully set forth herein.

147.    The musical "Evita," with lyrics by Tim Rice and music by Andrew Lloyd Webber, is the subject of United States Copyright Registration No. RE0000894535.   This registration was a renewal of Registration No. DU0000102092, which had been issued on December 17, 1976.  "Evita" is therefore subject to valid and subsisting protection under the laws of the United States.

148.    The copyright owners have granted an exclusive license to plaintiff R&H to license public performances of "Evita" for amateur and non-first-class productions in the United States.

149.    At no time have plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "Evita."

150.    Defendants' performance of "Don't Cry for Me Argentina" from "Evita", together with attendant theatrical aspects, including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

151.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

152.    Defendants' performance of "Don't Cry for Me Argentina" from "Evita" has violated and continues to violate R&H's exclusive copyright interests in "Evita" pursuant to 17 U.S.C. § 106(4).

153.    Defendants' violation of R&H's exclusive rights is willful.

154.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

155.    At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

156.    R&H is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; R&H has no adequate remedy at law; considering the balance of

hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A NINTH CLAIM FOR RELIEF

### (Copyright Infringement of "Don't Cry for Me Argentina")

157.    Plaintiffs repeat and reallege paragraphs 1 through and including 156 set forth hereinabove, as if the same were fully set forth herein.

158.    The song "Don't Cry for Me Argentina," with lyrics by Tim Rice and music by Andrew Lloyd Webber, is the subject of United States Copyright Registration No. Re 891-073. This registration was a renewal of Registration No. EF 41481, which had been issued on December 3, 1976.  "Don't Cry for Me Argentina" is therefore subject to valid and subsisting protection under the laws of the United States.

159.    The copyright owners have granted an exclusive license to plaintiff R&H to license public performances of the song "Don't Cry for Me Argentina" for amateur and non-first-class productions in the United States.

160.    At no time has plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of the song "Don't Cry for Me Argentina."

161.    Defendants' performance of "Don't Cry for Me Argentina," together with attendant theatrical aspects including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

162.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

163.     Defendants' performance of the song "Don't Cry for Me Argentina" has violated and continues to violate R&H's exclusive copyright interests in "Don't Cry for Me Argentina" pursuant to 17 U.S.C. § 106(4).

164.     Defendants' violation of R&H's exclusive rights is willful.

165.     As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

166.     At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

167.     R&H is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; R&H has no adequate remedy at law; considering the balance of hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A TENTH CLAIM FOR RELIEF
### (Copyright Infringement of "Cats")

168.     Plaintiffs repeat and reallege paragraphs 1 through and including 167 set forth hereinabove, as if the same were fully set forth herein.

169.     The musical "Cats," with music by Andrew Lloyd Webber and preexisting lyrics from "Old Possum's Book of Practical Cats" by T.S. Eliot, is the subject of United States Copyright Registration No. PAu002335507. "Cats" is therefore subject to valid and subsisting protection under the laws of the United States.

170.     The copyright owners have granted an exclusive license to plaintiff R&H to license public performances of "Cats" for amateur and non-first-class productions in the United States.

171.    At no time has plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "Cats."

172.    Defendants' performance of "The Naming of the Cats" dance number from "Cats", including song and choreography, together with attendant theatrical aspects including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

173.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

174.    Defendants' performance of The Naming of the Cats" dance number from "Cats" has violated and continues to violate R&H's exclusive copyright interests in "Cats" pursuant to 17 U.S.C. § 106(4).

175.    Defendants' violation of R&H's exclusive rights is willful.

176.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

177.    At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

178.    R&H is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; R&H has no adequate remedy at law; considering the balance of hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR AN ELEVENTH CLAIM FOR RELIEF

### (Copyright Infringement of "The Naming of Cats")

179.    Plaintiffs repeat and reallege paragraphs 1 through and including 178 set forth hereinabove, as if the same were fully set forth herein.

180.    The song "The Naming of Cats," with music by Andrew Lloyd Webber and preexisting lyrics by T.S. Eliot, is the subject of United States Copyright Registration No. Pa 162-876.   Pa 162-876 "The Naming of Cats" is therefore subject to valid and subsisting protection under the laws of the United States.

181.    The copyright owners have granted an exclusive license to plaintiff R&H to license public performances of the song "The Naming of Cats" for amateur and non-first-class productions in the United States.

182.    At no time has plaintiff R&H or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of the song "The Naming of Cats."

183.    Defendants' performance of the song "The Naming of Cats," together with attendant theatrical aspects including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

184.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

185.    Defendants' performance of the song "The Naming of Cats" has violated and continues to violate R&H's exclusive copyright interests in "The Naming of Cats" pursuant to 17 U.S.C. § 106(4).

186.    Defendants' violation of R&H's exclusive rights is willful.

DWT 22542217v3 0063653-000013

187.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

188.    At its discretion, R&H will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

189.    R&H is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; R&H has no adequate remedy at law; considering the balance of hardships between R&H and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A TWELFTH CLAIM FOR RELIEF

### (Copyright Infringement of "The Phantom of the Opera")

190.    Plaintiffs repeat and reallege paragraphs 1 through and including 189 set forth hereinabove, as if the same were fully set forth herein.

191.    The musical "The Phantom of the Opera," with music by Andrew Lloyd Webber, lyrics by Charles Hart and Richard Stilgoe, and additional lyrics by Mike Batt, is the subject of United States Copyright Registration No. PA341506.  "The Phantom of the Opera" is therefore subject to valid and subsisting protection under the laws of the United States.

192.    At no time has RUG, or anyone authorized to act on its behalf, authorized Defendants to perform a dramatic production of all or any part of "The Phantom of the Opera."

193.    Defendants' performance of "The Phantom of the Opera" from "The Phantom of the Opera," together with attendant theatrical aspects including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

194.    By performing material from "The Phantom of the Opera," Defendants are not only theatrically performing copyrighted material without authorization, but they are theatrically performing copyrighted material that is currently embargoed to all other non-first-class professional theatres that might wish to make authorized use of this material.

195.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

196.    Defendants' performance of "The Phantom of the Opera" from "The Phantom of the Opera" has violated and continues to violate RUG's exclusive copyright interests in "The Phantom of the Opera" pursuant to 17 U.S.C. § 106(4).

197.    Defendants' violation of RUG's exclusive rights is willful.

198.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

199.    At its discretion, RUG will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

200.    RUG is entitled to a permanent injunction because the injury that R&H has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; RUG has no adequate remedy at law; considering the balance of hardships between RUG and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF

### (Copyright Infringement of "Les Miserables")

201.    Plaintiffs repeat and reallege paragraphs 1 through and including 200 set forth hereinabove, as if the same were fully set forth herein.

202.    The musical "Les Miserables," with lyrics by Alain Boublil & Jean-Marc Natel; music by Claude-Michel Schoenberg, and English-language lyrics by Herbert Kretzmer, is the subject of United States Copyright Registration No. PA0000311709.    "Les Miserables" is therefore subject to valid and subsisting protection under the laws of the United States.

203.    The copyright owners have granted an exclusive license to plaintiff MTI Enterprises to license public performances of "Les Miserables" for amateur and non-first-class productions in the United States.

204.    At no time has plaintiff MTI Enterprises or the copyright owners, or anyone authorized to act on their behalf, authorized Defendants to perform a dramatic production of all or any part of "Les Miserables."

205.    Defendants' performance of five songs from "Les Miserables," together with the attendant theatrical aspects including those reminiscent of the Broadway production, constitutes a dramatic performance of a dramatico-musical work as defined by ASCAP and under law, and therefore is not covered by Defendants' ASCAP license.

206.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

207.    Defendants' performance of five songs from "Les Miserables" has violated and continues to violate MTI Enterprises' exclusive copyright interests in "Les Miserables" pursuant to 17 U.S.C. § 106(4).

208.    Defendants' violation of MTI Enterprises' exclusive rights is willful.

209.    As a direct and proximate result of Defendants' intentional acts as alleged herein, MTI Enterprises has been injured, in an amount presently unknown and to be determined at time of trial.

210.    At its discretion, MTI Enterprises will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

211.    MTI Enterprises is entitled to a permanent injunction because the injury that MTI Enterprises has suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; MTI Enterprises has no adequate remedy at law; considering the balance of hardships between MTI Enterprises and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A FOURTEENTH CLAIM FOR RELIEF

### (Damages for Copyright Infringement as to the 2011 Production of "Music of the Night: The Songs of Andrew Lloyd Webber")

212.    Plaintiffs repeat and reallege paragraphs 1 through and including 211 set forth hereinabove, as if the same were fully set forth herein

213.    Upon information and belief, Defendants' 2011 production of "Music of the Night: The Songs of Andrew Lloyd Webber" included dramatico-musical productions (using scenery, costumes, props, staging, choreograph, and/or dialogue) of songs from the musicals "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera." After discovery, Plaintiffs will amend this complaint to add a complete list of the songs and musicals infringed by the 2011 production of "Music of the Night: The Songs of Andrew Lloyd Webber."

214.    As alleged in paragraphs 103, 125, 147, 169, and 191 above, the owners of the copyrights to "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera" have duly registered for copyright protection in the United States Copyright Office, and all formalities in connection therewith have been duly complied with.  "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat,"

"Evita," "Cats," and "The Phantom of the Opera" are therefore subject to valid and subsisting protection under the laws of the United States.

215.    RUG has granted an exclusive license to plaintiff R&H to license public performances of the musicals "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," and "Cats," and any and all of the songs therefrom, for amateur and non-first-class productions in the United States.

216.    RUG retains the right to license public performances of the musical "The Phantom of the Opera," and any and all of the songs therefrom, for non-first-class productions in the United States.

217.    Defendants did not seek authorization from, or pay a licensing fee to, plaintiff R&H or plaintiff RUG for their use of songs from "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera."

218.    Defendants' above-described actions constitute copyright infringement in violation of the Copyright Act.

219.    Defendants' actions as alleged herein constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

220.    Defendants' performance of "The Music of the Night: The Songs of Andrew Lloyd Webber" has violated and continues to violate R&H and RUG's exclusive copyright interests in songs from "Jesus Christ Superstar," "Joseph and the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera" pursuant to 17 U.S.C. § 106(4).

221.    Defendants' performance of "The Music of the Night: The Songs of Andrew Lloyd Webber" has violated and continues to violate RUG's exclusive rights to license the

preparation of derivative works based on the works of Andrew Lloyd Webber, pursuant to 17 U.S.C. § 106(2).

222.    Defendants' violation of R&H's and RUG's exclusive rights is willful.

223.    As a direct and proximate result of Defendants' intentional acts as alleged herein, R&H has been injured, in an amount presently unknown and to be determined at time of trial.

224.    At its discretion, R&H and RUG will seek actual damages and Defendants' profits or, in the alternative, maximum statutory damages for Defendants' willful infringement.

225.    R&H and RUG are entitled to a permanent injunction because the injury that R&H and RUG have suffered and will continue to suffer unless Defendants' acts of infringement are enjoined as requested herein is irreparable; R&H and RUG have no adequate remedy at law; considering the balance of hardships between R&H and RUG and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent injunction.

## AS AND FOR A FIFTEENTH CLAIM FOR RELIEF

### (Declaratory Judgment As To the Planned 2014 Production of "Music of the Night: The Songs of Andrew Lloyd Webber)

226.    Plaintiffs repeat and reallege paragraphs 1 through and including 225 set forth hereinabove, as if the same were fully set forth herein.

227.    According to AMT's website, Defendants intend to revive "Music of the Night: The Songs of Andrew Lloyd Webber" in April 2014. The website further indicates that this show will feature the "AMT Orchestra, Singers and Dancers" who "will reprise show-stoppers from hits such as 'The Phantom of the Opera,' 'Jesus Christ Superstar,' 'Cats,' 'Evita' and more…"

228.    Upon information and belief, "Music of the Night: The Songs of Andrew Lloyd Webber" will include dramatico-musical productions (using scenery, costumes, props, staging, choreograph, and/or dialogue) of songs from the musicals "Jesus Christ Superstar," "Joseph and

the Amazing Technicolor Dreamcoat," "Evita," "Cats," and "The Phantom of the Opera" just as the "Broadway: Now and Forever" and the 2011 run of "Music of the Night: The Songs of Andrew Lloyd Webber" did.

229.    As alleged above, R&H is the exclusive licensor for non-first class dramatico-musical performances of the works of Andrew Lloyd Webber with the exception of "The Phantom of the Opera," and RUG has the right to license non-first class dramatico-musical performances of "The Phantom of the Opera."

230.    During several attempts at negotiation, Defendants refused to recognize that they need a license from Plaintiffs to perform "Broadway: Now and Forever."  Defendants did not seek a license from R&H or RUG in connection with the 2011 run of "Music of the Night: The Songs of Andrew Lloyd Webber."  Accordingly, Plaintiffs believe that Defendants do not intend to seek a license from R&H or RUG in connection with the 2014 run of "Music of the Night: The Songs of Andrew Lloyd Webber."

231.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether Defendants have the right to perform dramatico-musical productions of songs from the musicals of Andrew Lloyd Webber in connection with "Music of the Night: The Songs of Andrew Lloyd Webber."

232.    Plaintiffs thus desire and request a judicial determination be made pursuant to 28 U.S.C. § 2201 that performance of dramatico-musical productions (using scenery, costumes, props, staging, choreography and/or dialogue) of songs from any of the dramatico-musical works of Andrew Lloyd Webber in connection with the version of "Music of the Night: The Songs of Andrew Lloyd Webber" scheduled to open in April 2014 will constitute copyright infringement

in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.* and, specifically, of 17 U.S.C. § 106(4).

233.    A judicial determination of the parties' rights and duties is necessary and appropriate at this time and under the circumstances in order to resolve this controversy between the parties.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court enter judgment as follows:

1.    For a preliminary and/or permanent injunction enjoining Defendants and all persons acting in concert with them from presenting public performances of the Infringed Works in "Broadway: Now and Forever" and "Music of the Night: The Songs of Andrew Lloyd Webber" that tell a story and/or that use theatrical elements such as costumes, scenery, props, staging, choreography or dialogue, unless authorized to do so by Plaintiffs or the copyright holders;

2.    Awarding Plaintiffs all allowable damages under the Copyright Act, including, at their election, either:

   a.    Actual damages and the profits derived by Defendants as a result of their infringing activities, pursuant to 17 U.S.C. § 504; or

   b.    Statutory damages in the maximum amount of $150,000 with respect to each of the copyrighted musicals and each of the copyrighted songs that defendants have infringed, pursuant to 17 U.S.C. § 504(c);

3.    A declaration that dramatico-musical performances of songs from any dramatico-musical works of Andrew Lloyd Webber that will be included in "Music of the Night: The Songs of Andrew Lloyd Webber" scheduled to open in Spring 2014 will constitute copyright infringement in violation of 17 U.S.C. § 101, *et seq.*, and, specifically, of 17 U.S.C. § 106(4).

4.    Awarding Plaintiffs their costs and attorneys' fees, pursuant to 17 U.S.C. § 505; and

5.    Granting Plaintiffs such other and further relief as to this Court shall seem just and proper.

Dated: Philadelphia, PA
September 26, 2013

Respectfully submitted,

PEPPER HAMILTON LLP

By: _____
    M. Kelly Tillery

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

DAVIS WRIGHT TREMAINE LLP

By: _____
    Marcia B. Paul (*pro hac vice application
        pending*)
    Carolyn K. Foley (*pro hac vice
        application pending*)
    Camille Calman (*pro hac vice
        application pending*)

1633 Broadway 27th floor
New York, New York 10019
(212) 489-8230
*Attorneys for Plaintiffs*

TO:

Entertainment Theatre Group
d/b/a American Music Theatre

47

2425 Lincoln Highway East
Lancaster, PA 17602

James D. Martin
144 Huntingwood Drive,
Lancaster, PA  17602-1391

Dwight H. Brubaker
1117 Four Leaf Lane
Hollidaysburg, PA 16648-2514

Frederick W. Steudler, Jr.
7335 River Road,
Conestoga, PA 17516-9504

DWT 22542217v3 0063653-000013

EXHIBIT A

| Work | Copyright Registration Number | Effective Date |
|------|------------------------------|----------------|
| "The Producers" | Pau 2-507-947 | May 9, 2000 |
| "West Side Story" | RE0000221477. | October 29, 1984 |
| "Annie" | RE0000918254 | January 5, 2005 |
| "Jesus Christ Superstar" | RE0000794089 | December 12, 1998 |
| "Superstar" | RE0000755315 | December 25, 1997 |
| "Joseph and the Amazing Technicolor Dreamcoat" | RE000752885 | February 10, 1997 |
| "Any Dream Will Do" | Efo171657 | August 27, 1974 |
| "Evita" | RE0000894535 | December 31, 2003 |
| "Don't Cry for Me Argentina" | Re 891-073 | December 31, 2003 |
| "Cats" | PAu002335507 | October 14, 1998 |
| "The Naming of Cats" | Pa 162-876 | November 29, 1982 |
| "The Phantom of the Opera" | PA341506 | April 20, 1987 |
| "Les Miserables" | PA0000311709 | October 14, 1986 |

DWT 22542217v3 0063653-000013